**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRIEANT

----------------------------------------------------------------X

ALLAN IRWIN and INTERGOLF, INC.

Plaintiffs,

-against-

EMPIRE GOLF MANAGEMENT, LLC and BERGSTOL ENTERPRISES, INC.,

Defendants.

----------------------------------------------------------------X

Index #
Date Purchased:

**COMPLAINT**

FILED
U.S. DISTRICT COURT
2007 NOV 26 P 4: 49
S.D. OF N.Y. W.P.

'07 CIV 10585

Plaintiffs, Allan Irwin and Intergolf, Inc., by their attorney, Barry D. Haberman, Esq., complaining of the Defendants, EMPIRE GOLF MANAGEMENT, LLC and BERGSTOL ENTERPRISES, respectfully alleges as follows:

1. The Plaintiff, Allan Irwin, herein referred to as "Irwin", is a Virginia resident, domiciled at 43753 Welty Court, Ashburn, Virginia 20147.

2. Plaintiff, Intergolf, Inc., herein referred to as "Intergolf" is a Florida corporation, principal place of business located at 43753 Welty Court, Ashburn, Virginia 20147.

3. Upon information and belief, Defendant, Empire Golf Management, LLC, herein referred to as "Empire Golf" is a limited liability company organized under the laws of the State of New York.

4. Upon information and belief, the principal place of business of the Defendant, "Empire Golf" is located at 6 Station Road, Pomona, New York 10970, said location in Rockland County, New York.

5. Upon information and belief said principal place of business of the Defendant, "Empire Golf" is located within the jurisdiction of the Southern District of New York.

6. Upon information and belief, Defendant, Bergstol Enterprises, Inc., herein referred to as "Bergstol Enterprises" is a corporation organized under the laws of the State of New York.

7. Upon information and belief, the principal place of business of the Defendant, "Bergstol Enterprises" is located at 6 Station Road, Pomona, New York 10970, said location in Rockland County, New York.

8. Upon information and belief said principal place of business of the Defendant, "Bergstol Enterprises" is located within the jurisdiction of the Southern District of New York.

9. Upon information and belief, neither of the Plaintiffs, "Irwin" or "Intergolf" are residents of the same State as either of the Defendants, "Empire Golf" or "Bergstol Enterprises".

10. The Plaintiff, "Irwin" alleges damages exceeding $75,000.00.

11. Pursuant to 28 U.S.C. sec. 1332(a)(1) this District Court of the United States has original jurisdiction over the instant action.

12. As a substantial part of the events giving rise to the claim occurred in the Southern District of New York, under 28 U.S.C. sec 1391(a)(2), the Southern District of New York is a proper venue for this action.

13. As the Defendants, "Empire Golf" and "Bergstol Enterprises" are subject to personal jurisdiction in the Southern District of New York, under 28 U.S.C. sec. 1391(a)(3), the Southern District of New York is a proper venue for this action.

14. The Plaintiffs demand a jury trial to resolve all issues in this action.

**AS AND FOR A FIRST CAUSE OF ACTION**

15. The Plaintiffs repeat and reiterate each and every allegation hereinbefore set forth with the same force and effect as set forth herein.

16. On or about January 1, 2007, the Plaintiff, "Irwin" commenced employment for Defendant, "Empire Golf" and Defendant, "Bergstol Enterprises."

17. Upon information and belief, Mark R. Unger, is the President of Defendant, "Empire Golf".

18. Upon information and belief, Mark R. Unger, is the Chief Financial Officer of Defendant, "Bergstol Enterprises".

19. Upon information and belief, Mark R. Unger, is authorized to act on behalf of Defendant, "Empire Golf" and Defendant, "Bergstol Enterprises."

20. On or about April 2, 2007, Mark R. Unger, on behalf of the Defendants proposed a contract of employment to the Plaintiffs.

21. Said contract for employment was accepted by the Plaintiffs.

22. The contract provided for employment from January 1, 2007 through and including December 31, 2008.

23. The contract provided for salary in the total amount of $170,000 per year for the first year of employment (2007), with Defendant, "Empire Golf" responsible for

$130,000 payable to Plaintiff, "Irwin" and Defendant, "Bergstol Golf" responsible for $40,000 payable to Plaintiff, "Intergolf".

24. The contract provided for salary in the total amount of $190,000 per year for the first year of employment (2008), with Defendant, "Empire Golf" responsible for $130,000 payable to Plaintiff, "Irwin" and Defendant, "Bergstol Golf" responsible for $60,000 payable to Plaintiff, "Intergolf".

25. The contract provided for a car allowance of $500 per month, a cell phone allowance of $125 per month, 100% coverage with a health and dental insurance plan for the Plaintiff, "Irwin" and his spouse, said amounts payable from Defendant, "Empire Golf" to Plaintiff, "Irwin".

26. The contract also provided for additional compensation pursuant to a bonus program and profit participation, with Defendant, "Empire Golf" responsible for same to Plaintiff, "Irwin."

27. On or about November 1, 2007 without cause, the Defendants terminated the employment of the Plaintiffs.

28. Upon information and belief, the Defendants terminated the Plaintiff's medical and dental insurance effective November 1, 2007.

29. Due to the Defendants' termination of the Plaintiff, "Irwin's" health insurance, the Plaintiff, "Irwin" now has monthly health insurance premiums in the amount of $658 ($593 medical and $65 dental).

30. As the result of the termination of employment, the Defendants breached the contract of employment.

31. Defendant, "Empire Golf" failed to remit to Plaintiff, "Irwin" compensation due for four (4) days for services performed in October 2007.

32. As the result of the Defendants' breach of contract, the Defendants owe to the Plaintiffs all of the compensation provided for in said contract.

33. Thus, there is now due and owing from Defendant, "Empire Golf" to the Plaintiff, "Irwin" the sum of $153,666.66 in compensation pursuant to the Contract, $7,000.00 for the car allowance, $1,750.00 for the cell phone allowance, $9,212.00 for the payment of medical and dental insurance premiums, and additional compensation in an amount to be determined at trial as the per the bonus program and profit participation.

34. Thus, there is now due and owing from Defendant, "Bergstol Enterprises" to the Plaintiff, "Intergolf" the sum of $66,666.66 in compensation pursuant to the Contract.

**<u>AS AND FOR A SECOND CAUSE OF ACTION</u>**

35. The Plaintiffs repeat and reiterate each and every allegation hereinbefore set forth with the same force and effect as if set forth herein.

36. Pursuant to the terms of the contract, Defendant, "Empire Golf" owes the Plaintiff, "Irwin" unpaid wages in the amount of $153,666.66.

37. Defendant, "Empire Golf" has failed to remit to the Plaintiff, "Irwin" the compensation due under said contract

38. Said contract constitutes wages earned by the Plaintiff, "Irwin."

39. Thus, there is now due and owing to the Plaintiff, "Irwin" from the Defendant, "Empire Golf" the sum of $153,666.66 as unpaid wages.

40. The Defendant, "Empire Golf's" failure to pay such wages to the Plaintiff, "Irwin" is a violation of New York Labor Law sec. 191(1)(c) and LL sec. 191(3).

41. Upon a plaintiff prevailing in his wage claim, said plaintiff is entitled to reasonable attorney fees, LL sec. 198 (1-a).

42. Thus, upon the Plaintiff, "Irwin" prevailing in his wage claim, the Plaintiff, "Irwin" is entitled to reasonable attorney fees, LL sec. 198 (1-a).

43. The failure of the Defendant, "Empire Golf" to remit the earned wages in accordance with LL sec. 191(1)(c) and LL sec. 191(3), constitutes a willful failure to pay wages as required by New York Labor Law.

44. Such willful failure by the Defendant, "Empire Golf" to pay wages required under New York Labor Law is a violation of the Plaintiff, "Irwin's" rights under LL sec. 198 (1-a).

45. Under the provisions of LL sec. 198 (1-a), a prevailing employee is entitled to liquidated damages in the amount of 25% of the total wages found to be due.

46. Thus, the Plaintiff, "Irwin" is entitled to liquidated damages in the amount of 25% of the wage claim for $153,666.66, or $38,416.66, plus interest from dates such wages were required to be paid, plus attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION**

47. The Plaintiffs repeat and reiterate each and every allegation hereinbefore set forth in paragraphs 1 through 26 above, with the same force and effect as if set forth herein.

48. On or about October 17, 2007, the Defendants offered Plaintiff, "Irwin" a document entitled, "Agreement of Release and Waiver of Rights", said document herein referred to as Agreement."

49. On or about October 17, 2007, said "Agreement" was duly executed by the Mark R. Unger, on behalf of the Defendants.

50. On or about November 6, 2007, the Plaintiff, "Irwin" executed said "Agreement". Attached herein as Exhibit 1 is a copy of the fully executed "Agreement".

51. Upon information and belief, at no time prior to the Plaintiff, "Irwin's" execution of the "Agreement" did the Defendants communicate to the Plaintiff that said "Agreement" was withdrawn.

52. Seven days has passed since the Plaintiff, "Irwin" executed the "Agreement" and the Plaintiff, "Irwin" did not revoke said "Agreement."

53. The Defendants have failed to provide the compensation required under said "Agreement".

54. Upon information and belief, the Defendants terminated the Plaintiff's medical and dental insurance effective November 1, 2007.

55. As a result of the allegations contained in paragraphs 41 and 42 above, the Defendants are in breach of the "Agreement".

56. Pursuant to the terms of the "Agreement", the Defendants were required to pay compensation to the Plaintiffs for the months of November 2007, December 2007 and January 2008. The Defendants were also required to maintain Plaintiff, "Allan's" health benefits through February 28, 2008. The Defendants also acknowledged that they would pay to the Plaintiff the equivalent of two weeks' vacation pay.

57. Due to the Defendants' termination of the Plaintiff, "Irwin's" health insurance, the Plaintiff, "Irwin" now has monthly health insurance premiums in the amount of $658 ($593 medical and $65 dental).

58. As the result of the Defendants' breach of contract, there is now due and owing from the Defendants, jointly and severally, to the Plaintiffs the sum of $44,166.66 in compensation, $5,000.00 for two weeks vacation and $2,632.00 for payments for health insurance.

59. The Plaintiffs also seek payment of attorney fees and costs pursuant to the terms of the "Agreement".

**WHEREFORE,** Judgment is demanded:

1. By the Plaintiff, "Irwin" against Defendant, "Empire Golf" in the amount of $171,628.66 plus bonus compensation in an amount to be determined at trial, plus interest, for the breach contract (employment agreement).
2. By the Plaintiff, "Intergolf" against Defendant, "Bergstol Enterprises" in the amount of $66,666.66, plus interest, for the breach contract (consulting agreement).
3. By the Plaintiff, "Irwin" against Defendant, "Empire Golf" for the violation of Plaintiff, "Irwin's" rights under the provisions of New York State Labor Law sec. 190 et seq.
4. By the Plaintiff, "Irwin" against Defendant, "Empire Golf", awarding the Plaintiff, "Irwin" a monetary recovery in the amount of $153,666.66, plus interest for unpaid compensation, $38,416.66 as

liquidated damages, and attorney fees and expenses, the remedy provided a Plaintiff under the provisions of the New York State Labor Law sec. 190 et seq.

5. By the Plaintiffs against Defendant, "Empire Golf" and Defendant, "Bergstol Enterprises", jointly and severally in the amount of $51,798.66, plus interest, plus attorney fees and expenses, for the breach contract (Agreement of Release and Waiver of Rights).

6. Granting the Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New City, New York
November 23, 2007

BARRY D. HABERMAN, ESQ.
Attorney for Plaintiffs,
ALLAN IRWIN and
INTERGOLF, INC.
254 South Main Street, #401
New City, New York 10956
845-638-4294




6 Station Road • Pomona, New York 10970 • 845.362.9146 • Fax: 845.362.8799 • www.empiregolfusa.com

## AGREEMENT OF RELEASE AND WAIVER OF RIGHTS

This agreement is entered into this 10/17/07 by and between Empire Golf Management, LLC, Bergstol Enterprises, Inc. (hereinafter collectively called the "the Company"), and Allan Irwin.

In consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

The Company agrees to:

a) Accept the resignation of Allan Irwin effective 12/31/07.
b) Salary continuance through 1/31/08, less any customary state and federal deductions.
c) Provide a positive reference, which includes, but is not limited to, confirmation of employment dates and the position held. Salary confirmation would also be provided upon written authorization of Allan Irwin.
d) The inclusion of Allan Irwin under the Company's Directors and Officers/Employment Practices Liability insurance policy for any company-related claims or incidents that occur(ed) during Allan Irwin's employment.

Notwithstanding this Agreement, The Company will pay the equivalent of two weeks vacation compensation, which was earned by and owing to Allan Irwin at the time of his resignation effective date. Employer will continue health benefits thru 2/28/08.

Allan Irwin agrees:

1. In return for the benefits provided to Allan Irwin pursuant to Paragraph 1 herein, Allan Irwin hereby generally releases and forever discharges the Company, its parents and affiliates, and its and their collective and respective agents, employees, representatives, attorneys, assigns, directors, officers, shareholders, administrators and successors, from any and all demands, claims, actions, complaints, charges, obligations, agreements, promises, representations, damages, suits and liabilities, whether known or unknown, whether at law or in equity, of a class or individual nature, which Allan Irwin had, has or ever might claim to have, arising from or relating to Allan Irwin's employment and/or termination of employment with the Company as of the date Employee signs this Agreement, including, but not limited to, any claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., the Civil Rights Act of 1866, 42 U.S.C. §1981, the Civil Rights Act of 1991, Pub. L. No. 102-166, the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., the Fair Labor Standards Act, 29 U.S.C. §201 et seq., the National Labor Relations Act, 29 U.S.C. §151 et seq., the Americans With Disabilities Act, 42 U.S.C. §12101 et seq., Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq., the Family and Medical Leave Act, 29 U.S.C. §2601 et seq., Federal Executive Order 11246, any other federal, state or local statute, law, ordinance, regulation or order regarding employment, discrimination in employment, or the termination of employment, and the common law of any state relating to employment contracts, wrongful discharge, intentional infliction of emotional distress, public policy torts, remuneration in employment, or any other matter relating to Allan Irwin's employment with the Company. Provided, however, nothing contained in this Agreement shall limit Employee's right to challenge the enforceability of this release and waiver of claims.

AJI ✓

2. Whereas, Allan Irwin shall return, no later that December 31 2007, all company property (completed and in-progress), computers, keys, passwords, credit cards, etc. Allan Irwin shall return all company information, marketing materials, membership lists of any clubs, affiliates, etc. Allan Irwin may not use or copy any company information, marketing materials, membership lists of any clubs, affiliates, company photos, etc. Allan Irwin will provide to the Company a list of contacts/companies that he interacted with in conducting business on behalf of the Company and any of its affiliates.

3. That the terms of this Agreement and the details of separation from the Company shall be kept strictly confidential and shall not be directly or indirectly divulged to anyone else except tax authorities, immediate family, his attorney, his accountant, or prospective employers, without the written consent of the Company.

4. This agreement shall be binding upon each of the parties and each parties' heirs, successors, administrators, executors, legal representatives, agents and assigns.

4. If Allan Irwin violates any term of the Agreement, then Allan Irwin will be deemed to have breached it, and the Company is entitled to bring necessary action against Allan Irwin to recover any money paid to Allan Irwin pursuant to the Agreement.

5. That he agrees to pay all costs and expenses, including, without limitation, the attorney's fees and court costs incurred by the Company in enforcing this Agreement or in defending against any action brought by Allan Irwin concerning it.

6. This entire agreement has been carefully read and understood, and at least 21 days has been afforded to enable Allan Irwin to discuss it with an advisor of choice, including an attorney. Signature is of Allan Irwin's own free will and volition, and acceptance of the terms hereof is voluntary and has in no way been coerced. By signing this agreement, Allan Irwin understands that he is specifically waiving any rights or claims under the Age Discrimination in Employment Act.

7. This Separation and General Release shall take effect seven (7) days after Allan Irwin executes it. Allan Irwin shall have the right to revoke this Agreement during a period of seven days following his execution of this Agreement. In order to revoke this Agreement, Allan Irwin must notify the undersigned representative of the Company, in writing, of his decision to revoke, and such notice must be received by the undersigned representative of the Company no later than seven days following the execution of this Agreement. This agreement will not go into effect until after the seven day period has expired, and you will not receive any of the consideration listed in paragraph 1 until the seven-day period has expired. If Allan Irwin revokes this Agreement, he shall promptly repay to the Company all consideration paid to Allan Irwin under Paragraph 1 of this Agreement.

8. This agreement is not intended to prevent filing for unemployment benefits.

9. This agreement does not waive rights or claims that Allan Irwin arises after the date the waiver is executed.

10. This document is intended to be a complete recitation of the terms of this understanding and anything not contained in the document will not be considered part of either party's obligations under this agreement.

MRV

IN WITNESS WHEREOF, each of the parties has signed this Agreement on the date indicated.

**EMPIRE GOLF MANAGEMENT, LLC & BERGSTOL ENTERPRISES, INC.**

By: [signature]
Employer Signature

Mark R. Unger
Name

President/CEO
Title

10/17/07
Date

[signature]
Employee Signature

Allan Irwin
Name

11/6/07
Date

MRU